PELLETTIERI, RABSTEIN & ALTMAN
Arthur Penn (AP 2952)
790 Woodlane Road
Mt. Holly, New Jersey 08060
(609) 267-3390

Attorney for Plaintiff
(Additional Counsel Listed on Signature Page)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THOMAS J. DEBENEDICTIS<br>on behalf of himself and all others<br>similarly situated,<br><br>   Plaintiff,<br><br> v.<br><br>MERRILL LYNCH & CO., INC.;<br>MERRILL LYNCH, PIERCE,<br>FENNER & SMITH INCORPORATED;<br>MERRILL LYNCH GROUP, INC.;<br>FAM DISTRIBUTORS, INC.;<br>MERRILL LYNCH INVESTMENT<br>MANAGERS, L.P.;<br>FUND ASSET<br>MANAGERS, L.P.; and<br>PRINCETON SERVICES, INC.<br><br>   Defendants. | : : : : : : : : : : : : : : : : : : : : : : : : | Civil Action No. 04-404 (WJM)<br><br><br>CLASS ACTION<br><br><br><br>JURY TRIAL DEMANDED |

**RECEIVED**

JAN 30 2004

AT 8:30_____ M
WILLIAM T. WALSH
CLERK

### COMPLAINT

Plaintiff, Thomas J. DeBenedictis ("Plaintiff" or "DeBenedictis"), who resides at 1310

Junonia Street, Sanibel FL 33957, individually and on behalf of all those similarly situated, alleges,

based upon personal knowledge as to himself and his own acts and, as to other matters, based on

information and belief derived from the investigation of counsel (which included a review of

documents filed by defendants and their affiliates with the Securities and Exchange Commission

("SEC"), various news reports and articles and other publicly available information) as follows:

## INTRODUCTION AND OVERVIEW

1.      This a securities class action brought on behalf of purchasers of Class B shares issued by certain open-end investment companies affiliated with Merrill Lynch & Co., Inc. ("Merrill Lynch") under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Merrill Lynch, through affiliates, sponsors over 48 proprietary open-end investment companies which are registered with the SEC under the Securities Act and the Investment Company Act of 1940 (the "Investment Company Act"). In common parlance, these open-end investment companies are known as mutual funds. The open-end investment companies affiliated with Merrill Lynch are hereinafter referred to as "the Merrill Lynch Funds."[1]

3.      In or about March 1995, the SEC promulgated Rule 18f-3 under the Investment Company Act. This rule authorized investment companies to offer multiple share classes of the same underlying portfolio of investments. The majority of the Merrill Lynch Funds offer investors the option of investing in different share classes as more particularly described herein.

4.      A number of major brokerage firms offer multiple classes of shares for their proprietary mutual funds. The practice is also common at a number of fund companies which offer mutual funds that are subject to a sales charge or "load."

5.      At times relevant to this action, the Merrill Lynch Funds offered investors the option of purchasing one of four share classes, Class A, Class B, Class C and Class D. The registration statements and prospectuses for the Merrill Lynch Funds refer to this structure as the Merrill Lynch Select Pricing System.

---

[1]      Attached to this Complaint as Exhibit A is a listing of the Merrill Lynch Funds. It is possible that this list is incomplete. In addition, during the class period, certain Merrill Lynch Funds have been terminated, merged out of existence or renamed.

6.    Defendants disseminated materially false and misleading information about the Merrill Lynch Funds and their respective share classes in order to artificially inflate the the revenues of Merrill Lynch.  By conveying a misleadingly positive message about the load and expense structure of the Funds' Class B shares and neglecting to inform the customers of the fact that there is an overwhelming probability (and in many cases a certainty) that purchase of Class B shares would be an inferior investment choice, defendants hid the fact that the purchase of Class B Shares were not in the customer's best interest but rather in the best interest of Merrill Lynch.

7.    Each of the four Classes that the Merrill Lynch Funds historically offered were invested in an identical portfolio for any particular Merrill Lynch Fund, and each paid the same management fee.  The differences among the Classes are differences in the load structure, or sales charge, the extent of distribution or service fees, and the extent of other expenses.

8.    Class A Shares carry a front-end load; the maximum front-end load on equity funds is 5.25%, and the maximum front-end load on bond funds is 4%.  Class A Shares pay no distribution or service fee and carry the lowest level of other expenses, including administrative fees. The amount of the front-end load on Class A Shares decreases with larger investments.  Investors with existing holdings of Merrill Lynch Funds also may qualify for a reduced front-end load on Class A Shares based upon the greater of the cost or value of their holdings.  Class A Shares have restricted availability.

9.    Class B Shares carry no front-end load but have a maximum deferred sales charge or back-end load, which is calculated as percentage of the original purchase price or the redemption proceeds, whichever is lower.  The maximum deferred sales charge for Class B Shares is 4%, which amount decreases over time.  Class B Shares generally have annual distribution and service fees of between .75% and 1% and carry slightly higher other expenses then Class A Shares or Class D Shares.  Class B Shares are unrestricted.

10.     Class C Shares carry no front-end load and their maximum deferred sales charge or back-end load is 1%, which applies only if the shares are sold within one year of purchase. Class C Shares usually carry the same distribution and service fees as Class B Shares for equity funds; they carry service and distribution fees that are five basis points higher in funds that invest in fixed income instruments. Class C Shares in equity funds usually have a modestly higher level of other expenses; the total difference in annual expenses for Class B and Class C Shares in an equity fund is typically around 1 basis point. Class C Shares are unrestricted.

11.     Class D Shares carry the same front-end load as Class A Shares, carry a 25 basis point service fee, and generally carry the same level of other expenses as A Shares. Class B Shares convert into Class D Shares after they are held for a certain period of time, typically either eight years for equity funds or ten years for bond funds. Class D Shares are unrestricted. The amount of the front-end load on Class D Shares decreases with larger investments. Investors with existing holdings of Merrill Lynch Funds also may qualify for a reduced front-end load on Class A Shares based upon the greater of the cost or value of their holdings. The load and expense structure for the Class D Shares in the Merrill Lynch Funds is similar to the structure of Class A Shares issued by many other fund families.

12.     Because all of the share classes for each fund are invested in the same portfolio, the difference in returns generated by each share class is the result of the difference in the load and expense structure attributable to each class.

13.     The different share classes also yield different amounts of revenue for Merrill Lynch-Brokerage and for its individual registered representatives, whom it refers to as Financial Advisors ("Merrill Lynch FAs"). The ongoing service and distribution fees that attach to Class B and Class C shares do not decrease with larger investments, and the percentage of compensation for Merrill Lynch FAs is also fixed. Consequently, the compensation that Merrill Lynch FAs receive for the

sale of Class B shares can be higher than for Class A or Class D Shares. Specifically, for Class B shares, Merrill Lynch FAs received gross sales credit at the time of purchase that corresponds to the amount of credit that they would receive for the sale of Class A or Class D Shares at the maximum load. For sales of Class A and Class D Shares, the compensation received by the Merrill Lynch FAs decreases with larger investments. The result is that for larger investments, Merrill Lynch FAs can receive more in commissions from a sale of Class B Shares than they would from a sale of the same amount of either Class A or Class D Shares, which creates a conflict of interest.

14.     Defendants have structured the prospectuses for the Merrill Lynch Funds to focus the potential investors' attention on the financial incentives of Merrill Lynch FAs with respect to the sale of Class A and Class D Shares; however, they obscured the financial incentives that the FAs have in connection with the sale of Class B Shares, failing to disclose the potential conflict of interest that they have in connection with large investments that would qualify for a discounted front-end load on Class A or Class D Shares.

15.     On or about April 14, 2003, the Merrill Lynch Funds restructured the share classes, reclassifying Class D as Class A Shares, and Class A Shares as Class I Shares. This was done to make the designation of share classes for the Merrill Lynch Funds similar to those of other fund families. At the same time, the Merrill Lynch Funds created a new Class R which was restricted to certain retirement plans. For clarity, Plaintiffs will continue to refer to the share classes by their historical names without regard to the April 2003 reclassification.[2]

16.     Because they carry a front-end load, Class A Shares initially generate lower returns than either Class B Shares or Class C Shares. Over a longer holding period, however, the Class A Shares will ultimately out perform either Class B Shares or Class C Shares because they carry lower

---

[2]     Class R Shares, as they are restricted to retirement plans, are not relevant to this litigation.

5

annual expenses. Class D shares will perform similarly to Class A shares although their return will be slightly lower due to the 25 basis point service fee.

17.     Over a shorter holding period, Class C Shares consistently yield greater proceeds upon redemption than Class B Shares, as they have a lower back end load of shorter duration than Class B Shares.   By the time that Class B Shares generate greater proceeds on redemption than Class C Shares, they are generally outperformed by Class A and Class D Shares.

18.     For investors who qualified for the reduced sales charges that would apply to an investment of over $100,000 in Class A and Class D Shares, Class B Shares are an inferior investment choice because they are out performed over short holding periods by Class C shares and over longer holding periods by Class A and Class D shares.

19.     The prospectuses and registration statements pursuant to which the Merrill Lynch Mutual Funds are offered to the investing public uniformly omit to state the material fact that investing in Class B Shares never makes economic sense for investors who qualified for the reduced sales charges that would apply to an investment of over $100,000 in Class A or Class D Shares.

## JURISDICTION AND VENUE

20.     The Court has jurisdiction over this action under Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v, Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331, 1337.

21.     Venue is proper in this Court under Section 22 of the Securities Act, 15 U.S.C. § 77v, Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391, as the Merrill Lynch Funds are based here, and their misleading disclosures were disseminated from this district.

## PARTIES

22.     Plaintiff Thomas J. DeBenedictis is an individual who invested in various Merrill Lynch Funds as follows:

a.      On February 1, 1999, DeBenedictis invested $54,036.94 in Class B Shares of Merrill Lynch Global Growth Fund through defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated; due to prior purchases that DeBenedictis had made this amount could have been invested in Class D shares at the load applicable to a purchase in excess of $100,000;

b.      On January 7, 2000, DeBenedictis invested $150,033.32 in Class B Shares of Merrill Lynch Global Growth Fund through defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated; this amount could have been invested in Class D shares at a reduced load applicable to a purchase in excess of $100,000;

c.      On January 19, 2001, DeBenedictis invested $175,019.00 in Class B Shares of Merrill Lynch U.S. High Yield Fund through defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated; this amount could have been invested in Class D shares at a reduced load applicable to a purchase in excess of $100,000;

d.      On August 29, 2001, DeBenedictis invested $135,043.00 in Class B Shares of Merrill Lynch Small Cap Value Fund through defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated; this amount could have been invested in Class D shares at a reduced load applicable to a purchase in excess of $100,000;

e.      During the five years preceding the filing of this action, DeBenedictis purchased Class B Shares through dividend reinvestment in various Merrill Lynch Funds, including the following: Merrill Lynch Global Growth Fund, Merrill Lynch U.S. High Yield Fund, Merrill Lynch Small Cap Value Fund, Merrill Lynch Dragon Fund, and Merrill Lynch Bond Fund-High Income Portfolio.

23.     Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") is a Delaware Corporation with its principal place of business in New York, New York. Defendant Merrill Lynch is a holding company that, through its subsidiaries and affiliates, provides broker-dealer, financing, advisory,

7

wealth management, asset management, insurance, lending and related products and services on a global basis.

24.     Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch-Brokerage") is a Delaware Corporation with its principal place of business in New York, New York. Defendant Merrill Lynch-Brokerage is broker and dealer in securities registered with the SEC, and is a wholly-owned subsidiary of Merrill Lynch.

25.     Merrill Lynch Group, Inc. ("Merrill Lynch Group") is a Delaware Corporation with its principal place of business in New York, New York.  Merrill Lynch Group is a wholly-owned subsidiary of Merrill Lynch.

26.     Defendant FAM Distributors, Inc., ("FAM Distributors") is a Delaware Corporation with its principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey 08536.  FAM Distributors is an indirect wholly-owned subsidiary of Defendant Merrill Lynch, and a wholly-owned subsidiary of Merrill Lynch Group.  FAM Distributors serves as the sole distributor for the Merrill Lynch Funds.

27.     Defendant Merrill Lynch Investment Managers, L.P. ("ML Investment Managers") is a limited partnership formed under Delaware law with its principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey 08536.  Defendant ML Investment Managers is an investment adviser, registered with the SEC pursuant to the Investment Advisers Act of 1940.  Defendant Merrill Lynch is the sole limited partner in ML Investment Managers.

28.     Defendant Fund Asset Management, L.P. ("Fund Asset Management") is a limited partnership formed under the law of Delaware with its principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey 08536.  Defendant Fund Asset Management is an investment adviser registered with the SEC under the Investment Advisers Act of 1940.  Defendant Merrill Lynch is the sole limited partner in Fund Asset Management.

29.     Defendant Princeton Services, Inc. ("Princeton Services") is a Delaware Corporation with its principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey 08536. Defendant Princeton Services is an indirect wholly-owned subsidiary of Merrill Lynch and a wholly-owned subsidiary of Merrill Lynch Group. Princeton Services serves as the general partner for defendants ML Investment Managers and Fund Asset Management.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action under Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a Class (the "Class") consisting of all persons who purchased Class B Shares subject to a maximum deferred sales charge of over 1.0% issued by one of the Merrill Lynch Funds during the period from January 30, 1999 through the present and who qualified for a reduced sales charge that would apply to an investment of over $100,000 in Class D Shares, and Plaintiff brings this action on behalf of a Subclass (the "Securities Act Subclass") consisting of all persons who purchased Class B Shares subject to a maximum deferred sales charge of over 1.0% issued by one of the Merrill Lynch Funds pursuant to a registration statement that was the subject of a post-effective amendment during the period from January 30, 2001 through the present and who qualified for a reduced sales charge that would apply to an investment of over $100,000 in Class D Shares. Excluded from the Class and from the Securities Act Subclass are the defendants, their affiliates, successors and assigns, officers and directors and members of their immediate families.

31.     Both the Class and the Securities Act Subclass are so numerous that joinder of all members is impracticable. While the precise number of members is not known to Plaintiff at the present time, millions of Class B shares were sold in the Merrill Lynch Funds during the relevant time period.

32.     There are questions of law or fact common to the Class and the Securities Act Subclass, including the following:

a.      whether Class B Shares are an economically rational investment when compared with Class A Shares, Class C Shares or Class D Shares;

b.      whether the registration statements and prospectuses for the Merrill Lynch Funds omitted to state the material fact that Class B Shares are inherently inferior Class A Shares, Class C Shares and Class D Shares;

c.      whether defendants violated Section 11 of the Securities Act;

d.      whether defendants violated Section 12(2) of the Securities Act;

e.      whether defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder;

f.      whether the members of the Class and the Securities Act Subclass have sustained damages, and if so the proper measure of damages.

33.     Plaintiff's claims are typical of the claims of the members of the Class and the Securities Act Subclass as he purchased Class B Shares in the Merrill Lynch Funds pursuant to registration statements and prospectuses that uniformly failed to disclose that the Class B Shares were an inferior investment to Class A Shares, Class C Shares and Class D Shares.

34.     Plaintiff is a representative party who will fairly and adequately protect the interests of the Class and the Securities Act Subclass; he has retained counsel who are experienced and competent in both class actions and securities litigation, generally.  Plaintiff has no interests which are contrary to or in conflict with those of the members of the Class and the Securities Act Subclass.

35.     The questions of law and fact common to the members of the Class and the Securities Act Subclass predominate over any questions which affect only individual members.

36.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy as many members of the Class and the Securities Act Subclass will have damages arising from defendants' wrongful course of conduct which would not be susceptible to individualized litigation because of the cost associated with complex litigation of this kind.

## FACTUAL BACKGROUND

37.     Each of the Merrill Lynch Funds is an open-end investment company registered with the Securities and Exchange Commission, and each has filed a registration statement for its shares under Form N-1A under the Securities Act and the Investment Company Act.  Each of the Merrill Lynch Funds periodically files a post-effective amendment to its registration statement, thereby registering additional shares and updating the prospectus.

38.     Under Section 5(a)(1) of the Investment Company Act, an open-ended investment company is one which issues shares that are redeemable.  Shares issued by the Merrill Lynch Funds are redeemable at their net asset value, subject to any applicable back-end load.

39.     Each of the Merrill Lynch Funds is managed by Fund Asset Management or ML Investment Managers.

40.     Each Merrill Lynch Fund is organized either as a single entity with a board of directors overseeing the fund, or under a so-called master-feeder structure in which the particular Merrill Lynch Fund has an associated trust, and invests all of its assets into that trust, which in turn invests those assets in accordance with the fund's investment objectives.

41.     Each of the Merrill Lynch Funds has entered into a distribution agreement with defendant FAM Distributors.

42.     Each of the Merrill Lynch Funds offers its shares for sale through defendant Merrill Lynch-Brokerage in accordance with their distribution agreement with FAM Distributors.  Shares in the Merrill Lynch Funds are also available through a transfer agent affiliated with Merrill Lynch.

43.     Prior to April 14, 2003, each of the Merrill Lynch Funds offered four alternative classes of shares: Class A Shares, Class B Shares, Class C Shares, and Class D Shares. After April 14, 2003, each of the Merrill Lynch Funds offered five classes of shares: Class A Shares (formerly known as Class D Shares), Class B Shares, Class C Shares, Class I Shares (formerly known as Class A Shares) and Class R Shares. For clarity, Plaintiff will continue to refer to the various share classes by their historical names; Class R Shares were restricted and are not relevant to this action.

44.     At all times relevant to this action, the registration statements and prospectuses pursuant to which the Merrill Lynch Funds were offered to the public presented the relevant load and expense data for the classes of shares offered by the Merrill Lynch Funds in a uniform manner, subject only to variations in the front-end load between funds invested in equities and funds invested in fixed income instruments, and variations in the total annual expenses applicable to each of the Merrill Lynch Funds.

45.     Class A Shares and Class D Shares both carry so-called front-end loads or sales charges. The maximum front-end load on Merrill Lynch Funds that invest in equities is 5.25%, while the maximum front-end load for most Merrill Lynch Funds which invest in fixed income instruments is 4%. Certain of the Merrill Lynch Funds that invest in fixed income instruments with shorter durations, including the Merrill Lynch Bond Fund Intermediate Portfolio and the Merrill Lynch Municipal Intermediate Term Fund, carry a lower front end load of 1.0% on Class A and Class D Shares; these funds also carry a back end load of 1.0% on Class B Shares, and purchases of shares of these funds are not included within the scope of the Class or the Securities Act Subclass.

46.     The front-end load on Class A and Class D Shares is subject to break points. The vast majority of the Merrill Lynch Funds use an identical break point schedule, with one set of break points that applies to funds that invest in equities, and another that generally applies to funds that invest in fixed income instruments.

47.     The break points for Class A and Class D Shares in Merrill Lynch Funds that invest in equities are as follows:

      a.      investments of less than $25,000 are subject to a front-end load of 5.25%;

      b.      investments of $25,000 or more but less than $50,000 are subject to a front-end load of 4.75%;

      c.      investments of $50,000 or more but less than $100,000 are subject to a front-end load of 4%;

      d.      investments of $100,000 or more but less than $250,000 are subject to a front-end load of 3%;

      e.      investments of $250,000 or more but less than $1 million are subject to a front-end load of 2%;

      f.      investments of $1 million or more are not subject to a front-end load.

48.     Investors with existing holdings in Merrill Lynch Funds will also qualify for break points under a right of accumulation, which permits the investor to pay the sales charge that would apply to the cost or value (whichever is higher) of all shares the investor owns in Merrill Lynch Funds.

49.     Each of the registration statements and prospectuses pursuant to which Merrill Lynch Funds that invest in equities offered their shares to the public contained the foregoing break point schedule.

50.     The break points for Class A and Class D shares in most Merrill Lynch Funds that invest in fixed income instruments are as follows:

      a.      investments of less than $25,000 carry a front-end load of 4%;

      b.      investments of $25,000 or more but less than $50,000 are subject to a front-end load of 3.75%;

        c.      investments of $50,000 or more, but less than $100,000 are subject to a front-end load of 3.25%;

        d.      investments of $100,000 or more but less than $250,000 are subject to a front-end load of 2.5%;

        e.      investments of $250,000 or more but less than $1 million are subject to a front-end load of 1.5%;

        f.      investments of $1 million or more are not subject to a front-end load.

51.      Investors who purchase shares in Merrill Lynch Funds that invest in fixed income instruments can also qualify for break points based upon their existing holdings under a right of accumulation, which permits the investor to pay the sales charge that would apply to the cost or value (whichever is higher) of all shares the investor owns in Merrill Lynch Funds.

52.      The foregoing break point schedule did not apply to certain Merrill Lynch Funds that invested in fixed income instruments of limited duration, which have a lower front end load with different break points these funds also carry a back end load of 1.0% on Class B Shares, and purchases of shares of these funds are not included within the scope of the Class or the Securities Act Subclass.

53.      The registration statements and prospectuses pursuant to which most of the Merrill Lynch Funds that invested in fixed income instruments offered their shares to the public contained the foregoing break point schedule.

54.      The percentage of revenue that Merrill Lynch receives from sales of Class A and Class D Shares decreases as customers qualify for break points, and the percentage of each sale that Merrill Lynch FAs receive as a commission also decreases as the size of the investment increases. Dealer compensation at the time of sale of equity funds is 5% for purchases of less than $25,000; 4.5% for purchases of more than $25,000 but less than $50,000; 3.75% for purchases of more

$50,000 but less than $100,000; 2.75% for purchases of more than $100,000 but less than $250,000; and 1.8% for purchases of more $250,000 but less than $1 million.[3]

56. Dealer compensation at the time of sale of funds that invest in fixed income investments is generally 3.75% for purchases of less than $25,000; 3.5% for purchases of more than $25,000 but less than $50,000; 3.0% for purchases of more $50,000 but less than $100,000; 2.25% for purchases of more than $100,000 but less than $250,000; and 1.25% for purchases of more $250,000 but less than $1 million.[4]

56. Class B Shares in Merrill Lynch Funds carry a back-end load. The back-end load on Class B shares does not vary with the size of the investment, and it is the same for nearly all of the Merrill Lynch Funds, except for a limited number of funds that invest in shorter duration fixed income instruments. The standard back-end load for most Class B Shares in Merrill Lynch Funds is 4%. While the back-end load on Class B Shares does not decrease with the size of the investment, it does decrease over time. Certain of the Merrill Lynch Funds that invest in fixed income instruments with shorter durations, including the Merrill Lynch Bond Fund Intermediate Portfolio and the Merrill Lynch Municipal Intermediate Term Fund, carry a lower back end load of 1.0% on Class B shares that ends after the expiration of the three years from the date the Class B Shares are purchased, and purchases of shares of these funds are not included within the scope of the Class or the Securities Act Subclass.

57. Prior to June 1, 2001, the back-end load on Class B Shares in the vast majority Merrill Lynch Funds that invested in equities was eliminated if the shares were redeemed more than four years after they were purchased; a small minority of Merrill Lynch Funds that invested in

---

[3]     For purchases of $1,000,000 or more, the broker is compensated directly by the fund manager, however, if the shares are redeemed within one year after purchase, a deferred sales charge may be assessed to the customer of up to 1%.

[4]     For purchases of $1,000,000 or more, the broker is compensated directly by the fund manager, however, if the shares are redeemed within one year after purchase, a deferred sales charge may be assessed to the customer of up to 1%.

equities, including Merrill Lynch International Fund,. Merrill Lynch International Value, Merrill Lynch Pan-European Fund, and Merrill Lynch Small Cap Growth had a back end load that was eliminated after six years. Beginning after June 1, 2001, the back-end load on Class B Shares in all Merrill Lynch Funds that invest in equities is eliminated if they are redeemed more than six years after they were purchased.

58.     Most of the Merrill Lynch Funds that invest in fixed income instruments utilized the same back end load structure as the Merrill Lynch Funds that invest in equities, with the back end load on Class B Shares ending after four years from purchase for shares purchased prior to June 1, 2001 and after six years for shares purchased after that date. The exceptions are certain fixed income funds that invest in limited duration instruments, which, as noted above, generally carry a lower front end load on Class A and Class D Shares, and a lower back end load of shorter duration on Class B shares; purchases of shares of these funds are not included within the scope of the Class or the Securities Act Subclass.

59.     For the vast majority of Class B Shares purchased prior to June 1, 2001, the standard reduction in back-end load on Class B Shares was governed by the following schedule:

| YEARS SINCE PURCHASE | SALES CHARGE |
|---|---|
| 0-1 | 4% |
| 1-2 | 3% |
| 2-3 | 2% |
| 3-4 | 1% |
| 4 and thereafter | 0% |

16

60.     Prior to June 1, 2001, the vast majority of the registration statements and prospectuses pursuant to which the Merrill Lynch Funds offered their shares to the public contained the foregoing schedule for the back-end load, with the exception of certain fixed income funds that invested in instruments of shorter duration, and certain equity funds with a longer duration for the back end load.

61.     Commencing in June 2001, the Merrill Lynch Funds began to adopt the following schedule to govern the back-end load on Class B Shares:

| YEARS SINCE PURCHASE | SALES CHARGE |
|---|---|
| 0-1 | 4% |
| 1-2 | 4% |
| 2-3 | 3% |
| 3-4 | 3% |
| 4-5 | 2% |
| 5-6 | 1% |
| 6 and thereafter | 0% |

62.     Commencing on or about June 1, 2001, the registration statements and prospectuses pursuant to which the Merrill Lynch Funds offered their shares to the public were amended to adopt the foregoing back-end load schedule, with the exception of certain fixed income funds that invested in instruments of shorter duration; purchases of shares of these funds are not included within the scope of the Class or the Securities Act Subclass.

63.     Class B Shares in the Merrill Lynch Funds convert into Class D Shares after they are held for a period of time, typically eight years for funds that invest in equities and ten years for funds that invest in fixed income investments.

64.     The percentage of revenue that Merrill Lynch receives from the sale of Class B shares does not decrease with larger investments, and the percentage of compensation that Merrill Lynch FAs receive from sales of Class B Shares.  Instead Merrill Lynch FAs receive a flat percentage in gross sales credit on the sale of Class B Shares which corresponds to the amount they would receive for a sale of Class A or Class D Shares at the maximum load.  As a consequence, Merrill Lynch FAs can receive more in commissions through a sale of a large block of Class B Shares than they could receive from the sale of the same amount of Class A or Class D Shares, thereby creating a conflict of interest.

65.     At all times relevant to this action, Class C Shares in all of the Merrill Lynch Funds carried a back-end load of 1% which applied if the shares were redeemed within one year after they were purchased.  Class C Shares are not convertible.

66.     In addition to the sales loads, the returns associated with the various share classes of the Merrill Lynch Funds are affected by the annual expenses associated with ownership of a particular class.  These expenses, which are deducted from the assets owned by each of the Merrill Lynch Funds, fall into three categories:

       a.     management fees;

       b.     12b-1 distribution and/or service fees; and

       c.     other expenses.

67.     All Share Classes pay identical management fees.

68.     Class A Shares are not subject to 12b-1 distribution and service fees, and carry the lowest level of other expenses.

69.     In Merrill Lynch Funds that invest in equities, Class B Shares are subject to annual 12b-1 distribution and service fees; they are subject to a .75% distribution fee, and a .25% account maintenance fee. Class B Shares generally also pay a slightly higher level of other expenses than Class A Shares or Class D Shares.

70.     In Merrill Lynch Funds that invest in equities, Class C Shares are subject to annual 12b-1 distribution and service fees. Class C shares pay an account maintenance fee of .25%, and generally carry a distribution fee of .75%. These Class C Shares carry carry a slightly higher level of other expenses than Class B Shares, typically one or two basis points.

71.     In Merrill Lynch Funds that invest in fixed income instruments, Class B Shares are generally subject to annual 12b-1 distribution and service fees. Class B Shares typically pay an account maintenance fee of .25% and generally carry a distribution fee of .50%.

72.     In Merrill Lynch Funds that invest in fixed income instruments, Class C Shares are generally subject to annual 12b-1 distribution and service fees. Class C Shares typically pay an account maintenance fee of .25% and generally carry a distribution fee of .55%.

73.     In all of the Merrill Lynch Funds, Class D Shares are subject to an annual 12b-1 service fee; specifically, they are subject to a .25% account maintenance fee. Class D Shares are not subject to distribution fees. Class D shares frequently carry a slightly higher level of other expenses than Class A Shares. They carry lower other expenses than either Class B Shares or Class C Shares.

74.     The overall effect of the different expense ratios applied to the different Classes of shares is as follows:

        a.      Class A Shares always carry the lowest expense ratio, and their annual expenses are generally at least 25 basis points lower than Class D Shares and at least 75 basis points lower than either Class B Shares or Class C Shares;

b.      Class B Shares generally have the second highest annual expense ratio; they generally carry an expense ratio of 1 to 5 basis points lower than Class C Shares. In Merrill Lynch Funds that invest in equities, Class B Shares carry an expense ratio that is at least 1% higher than Class A Shares and at least 75 basis points higher than Class D Shares, and in Merrill Lynch Funds that invest in fixed income instruments, Class B Shares carry an expense ratio that is at least 75 basis points higher than Class A shares and at least 50 basis points higher than Class D Shares;

c.      Class C Shares always carry the highest annual expense ratio, however, the difference in total annual expenses between Class C Shares and Class B Shares is modest, generally between 1 and 5 basis points;

d.      Class D Shares carry the second lowest annual expense ratio; they are always subject to at least 75 basis points less in annual expenses than Class B Shares (for funds that invest in equities), at least 50 basis points less in annual expenses than Class B Shares (for funds that invest in fixed income instruments), and they always have annual expenses of approximately 25 basis points more than Class A Shares.

75.     At all times relevant to this action, the registration statements and prospectuses pursuant to which the Merrill Lynch Funds offered their shares to the public described the relevant considerations that were material to a decision of the appropriate share class to purchase substantially as follows:

> If you select Class B or Class C Shares, you will invest the full amount of your purchase price but you will subject to a distribution fee of $X\%$ and an account maintenance fee of $Y\%$. Because these fees are paid out of the funds' assets on an ongoing basis, over time these fees increase the cost of your investment and may cost you more than paying other types of sales charges. In addition, you may be subject to a deferred sales charge when you sell Class B or Class C Shares.

76.     Recently, Class B Shares have begun to receive scrutiny questioning whether they are economically sound investments.

77.     On or about June 28, 2003, the National Association of Securities Dealers issued an investor alert, raising the question whether investors were buying Class B Shares in circumstances where they were not cost-effective.

78.     On or about October 20, 2003, Standard & Poor's issued a press release describing a review it had conducted of the performance of multiple share classes in mutual funds. The study concluded that over a variety of holding periods, Class A Shares and Class C Shares were superior to Class B Shares.

79.     For the Merrill Lynch Funds, over long holding periods, Class A Shares and Class D Shares out perform Class B and Class C Shares because the Class A and Class D Shares carry lower annual expenses. Break points that reduce the front-end load will shorten the time period for which Class A or Class D Shares must be held before they out perform both Class B shares and Class C Shares.

80.     Over shorter holding periods, Class B Shares generate larger balances than Class C Shares, but will yield less upon redemption because they bear a higher back-end load of longer duration. The difference in the balances generated by B Shares and C Shares over a shorter holding period are modest, since they are simply driven by the one to five basis point differential in the annual expenses to which Class B Shares and Class C Shares are subject.

81.     For members of the Class and the Securities Act Subclass, Class B Shares do not represent a rational investment choice. Over short holding periods, C Shares will generate greater redemption proceeds while carrying immaterially smaller balances. By the time that B Shares generate greater redemption proceeds than C Shares, they will be out-performed by Class A Shares and Class D Shares. The registration statements and prospectuses pursuant to which the Merrill

21

Lynch Funds were offered to the public uniformly omitted to state the material fact that investors who qualified for a reduced front-end load on Class A or Class D Shares associated with an investment of over $100,000 would not benefit from a purchase of Class B shares. Further, the registration statements and prospectuses uniformly failed to disclose the conflict of interest that Merrill Lynch FAs have due to the fact that they can earn a greater commission on sales of Class B Shares than they can earn on large investments in Class A or Class D Shares.

## COUNT I

(Violation of Section 11 of the Securities Act)

82. Plaintiff DeBenedictis incorporates herein by reference the allegations contained in paragraphs 1 through 81 above as if fully set forth herein at length. This Count is asserted under Section 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77o, on behalf of the Securities Act Subclass against defendants FAM Distributors, Merrill Lynch-Brokerage, Merrill Lynch and Merrill Lynch Group.

83. The prospectuses and registration statements for the Merrill Lynch Mutual Funds contained untrue statements and material fact and omitted to state material facts required to be stated therein or necessary to make the statements made therein not misleading, as set forth above.

84. Defendants FAM Distributors and Merrill Lynch-Brokerage served as underwriters for the shares issued by the Merrill Lynch Funds.

85. Defendants Merrill Lynch and Merrill Lynch Group are controlling persons of defendants FAM Distributors and Merrill Lynch-Brokerage under Section 15 of the Securities Act.

86. Plaintiff DeBenedictis and the members of the Securities Act Subclass were unaware of the aforesaid misrepresentations and omissions of material fact at the time they purchased their shares and could not have discovered them by the exercise of reasonable diligence prior to their purchases.

87.     Plaintiff DeBenedictis and the members of the Securities Act Subclass were damaged as a result of defendants' misrepresentations and omissions of material fact.

88.     By virtue of the foregoing, defendants FAM Distributors and Merrill Lynch-Brokerage have violated Section 11 of the Securities Act and are liable to plaintiff DeBenedictis and the other members of the Securities Act Subclass, each of whom suffered damages as a result of such violations in an amount which cannot presently be determined. Defendants Merrill Lynch and Merrill Lynch Group are liable to Plaintiff DeBenedictis and the other members of the Securities Act Subclass as controlling persons under Section 15 of the Securities Act.

89.     Under Section 24(e) of the Investment Company Act, 15 U.S.C. § 80a-24(e), this action is commenced within three years of the *bona fide* public offering of the shares and is also commenced within one year of the time any member of the Securities Act Subclass could have learned of the wrongs alleged herein.

90.     The first date when any member of the Securities Act Subclass could have learned of the wrongs alleged was October 20, 2003, when Standard & Poor's issued the press release describing the results of its study of the financial performance of Class B Shares.

## COUNT II

(Violation of Section 12(2) of the Securities Act)

91.     Plaintiff DeBenedictis incorporates herein by reference the allegations contained in paragraphs 1 through 81 above as if fully set forth at length. This Count is asserted under Sections 12(2) and 15 of the Securities Act, 15 U.S.C. §§ 77*l*, 77o, on behalf of the Securities Act Subclass against defendants FAM Distributors, Merrill Lynch-Brokerage, Merrill Lynch and Merrill Lynch Group.

92.     The registration statements and prospectuses pursuant to which the Merrill Lynch Funds contained untrue statements of material fact and omitted to state material facts necessary in

order to make the statements made therein concerning the relative merits of Class B Shares issued by the Merrill Lynch Funds not misleading in light of the circumstances.

93.     Plaintiff DeBenedictis and the members of the Securities Act Subclass did not know of the material facts omitted from the registrations statements and prospectuses.

94.     Defendants FAM Distributors and Merrill Lynch-Brokerage were sellers of the Class B Shares purchased by the members of the Securities Act Subclass. Defendants Merrill Lynch and Merrill Lynch Group were controlling persons of these sellers under Section 15 of the Securities Act.

95.     By reason of their conduct as described above, defendants FAM Distributors and Merrill Lynch-Brokerage violated Section 12(2) of the Securities Act causing injury to plaintiff DeBenedictis and the Securities Act Subclass in an amount that cannot presently be determined. Defendants Merrill Lynch, and Merrill Lynch Group are jointly and severally liable as controlling persons under Section 15 of the Securities Act.

96.     This action is commenced within three years of the purchase of the shares and within one year of the time any member of the Securities Act Subclass could have learned of the wrongs alleged herein.

97.     The first date when any member of the Securities Act Subclass could have learned of the wrongs alleged was October 20, 2003, when Standard & Poor's issued the press release describing the results of its study of the financial performance of Class B Shares.

98.     Plaintiff DeBenedictis and the members of the Securities Act Subclass hereby tender their shares to the extent they still hold them; to the extent they do not they are entitiled to rescissory damages.

## COUNT III

(For Violation of Section 10(b)
of the Securities Exchange Act and
Rule 10b-5)

99.     Plaintiff DeBenedictis incorporates herein by reference the allegations contained in

paragraphs 1 through 81 above as if fully set forth herein at length. This Count is asserted under

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated

thereunder on behalf of the Class against all defendants.

100.    It is appropriate to treat the defendants as a group for purpose of pleading, as they

are all affiliated with one another, and all were either directly involved in the preparation of the

registration statements and prospectuses for the Merrill Lynch Funds or controlled those who were.

Each of the defendants had a pecuniary interest in the sale of the Class B Shares in the Merrill Lynch

Funds, as the sale of the Class B shares generated greater returns to Merrill Lynch in the form of

greater sales charges and distribution fees.

101.    In connection with the offer and sale of securities, defendants intentionally or

recklesssly participated in a continuous course of conduct and employed devices, schemes or

artifices to defraud members of the Class by portraying Class B Shares as a rational investment

choice as compared to the purchase of Class A, Class C, or Class D Shares.

102.    In connection with the offer and sale of securities, defendants intentionally or

recklessly omitted to state material facts necessary to make the statements made to Plaintiffs and the

members of Class, in light of the circumstances under which they were made, not misleading.

103.    In connection with the offer and sale of securities, defendants intentionally engaged

in acts, practices or a course of business which operated as a fraud or deceit on Plaintiffs and the

members of the Class.

104.     Plaintiff and the other members of the Class were unaware of defendants' misconduct and of the misleading nature of the representations made in the registration statements and prospectuses pursuant to which the shares were sold.

105.     Plaintiff and the other members of the Class have been damaged as a result of defendants' misconduct.

## JURY DEMAND

106.     Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the members of the Class and the Securities Act Subclass respectfully request that the Court enter judgment as follows:

a.      Declaring this action to be a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.      Appointing Plaintiff as the representative of the Class and the Securities Act Subclass and appointing his counsel as counsel to the Class and the Securities Act Subclass.

c.      Awarding Plaintiff and the Class compensatory damages;

d.      Awarding Plaintiff and the Securities Act Subclass damages or rescission;

e.      Awarding Plaintiff, the Class and the Securities Act Subclass the costs and expenses incurred in this litigation including reasonable attorneys' and expert witness fees; and

f.     Granting Plaintiff, the Class and the Securities Act Subclass such other and further

relief as the Court deems just and proper.

Dated: January 30, 2004                    PELLETTIERI, RABSTEIN & ALTMAN


By:_____
                                           Arthur Penn (AP 2952)
                                           790 Woodlane Road
                                           Mt. Holly, New Jersey 08060
                                           (609) 267-3390


                                           CHIMICLES & TIKELLIS LLP
                                           Nicholas E. Chimicles
                                           (NC 8871)
                                           James R. Malone, Jr.
                                           (JM 2058)
                                           Ramona M. Mariani
                                           (RM 8543)
                                           A Member of the Bar of this Court
                                           361 West Lancaster Avenue
                                           Haverford, PA 19041
                                           (610) 642-8500

                                                       and

                                           DeBENEDICTIS & DeBENEDICTIS
                                           Michael J. DeBenedictis
                                           (MD 8048)
                                           A Member of the Bar of this Court
                                           41 South Haddon Avenue
                                           Suite 5
                                           Hadddonfield, NJ 08033
                                           (856) 795-5892
                                           Attorneys for Plaintiff, the Proposed Class
                                           and the Proposed Securities Act Subclass

## CERTIFICATION OF NAMED PLAINTIFF
## THOMAS J. DEBENEDICTIS

Thomas J. DeBenedictis declares as follows:

1.    I have reviewed the Complaint prepared by counsel and have authorized its filing.

2.    I did not purchase the securities that are the subject of the Complaint at the direction of counsel or in order to participate in any private action arising under the federal securities laws.

3.    I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    During the proposed Class Period, I purchased Class B Shares of Merrill Lynch Funds, as follows:

a.    On February 1, 1999, I invested $54,036.94 in Class B Shares of Merrill Lynch Global Growth Fund through my brokerage accounts at defendant Merrill Lynch P, F&S;

b.    On January 7, 2000, I invested $150,033.32 in Class B Shares of Merrill Lynch Global Growth Fund through my brokerage accounts at defendant Merrill Lynch P, F&S;

c.    On January 19, 2001, I invested $175,019.00 in Class B Shares of Merrill Lynch U.S. High Yield Fund through my brokerage accounts at defendant Merrill Lynch P, F&S;

d.    On August 29, 2001, I invested $135,043.00 in Class B Shares of Merrill Lynch Small Cap Value Fund through my brokerage accounts at defendant Merrill Lynch P, F&S;

e.    During the five years preceding the filing of this action, I purchased Class B Shares through dividend reinvestment in various Merrill Lynch Funds, including the following: Merrill Lynch Global Growth Fund, Merrill Lynch U.S. High Yield Fund, Merrill Lynch Small Cap Value Fund, Merrill Lynch Dragon Fund, and Merrill Lynch Bond Fund-High Income Portfolio.

5.    In the past three years, I have not sought to serve nor have I served as a representative party on behalf of a class in an action filed under the federal securities laws.

6.    I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27 day of January, 2004

Thomas J. DeBenedictis

2