UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THOMAS J. DEBENEDICTIS<br>on behalf of himself and all<br>others similarly situated,<br>　　　　　　　Plaintiffs,<br>　　v.<br><br>MERRILL LYNCH & CO., INC.; et al.<br><br>　　　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO. 04-404 (JLL)<br><br><br><br><br><br>**ORAL ARGUMENT<br>REQUESTED** |

**BRIEF OF DEFENDANTS MERRILL LYNCH & CO., INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, AND MERRILL LYNCH GROUP INCORPORATED IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

| | |
|---|---|
| **BRESSLER, AMERY & ROSS**<br>A Professional Corporation<br>325 Columbia Turnpike<br>Florham Park, New Jersey 07932<br>P.O. Box 1980<br>Morristown, New Jersey 07962<br>(973) 514-1200 | **MUNGER, TOLLES & OLSON LLP**<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, California 90071<br>(213) 683-9100 |

Attorneys for Defendants
Merrill Lynch & Co., Inc., Merrill
Lynch Group, Inc., and Merrill Lynch
Pierce, Fenner & Smith Incorporated

**On the Brief:**

　　Marc T.G. Dworsky
　　David H. Fry
　　Brian F. Amery (BA 7144)
　　David J. Libowsky (DL 9250)

## **TABLE OF CONTENTS**

1.    INTRODUCTION.................................................................................................. 1

II.    ANALYSIS............................................................................................................ 3

    A.    The Non-Fund Defendants Join In the Arguments Of The Other Defendants.................................................................................................3

    B.    All of Plaintiff's Disclosure Claims Asserting Primary Violations By The Non-Fund Defendants Fail For The Additional Reason That Plaintiff Has Not Alleged Facts Showing Any Violation By Any Of These Defendants................................................................................... 3

    C.    All of Plaintiff's Disclosure Claims Asserting "Control Person" Liability By The Non-Fund Defendants Fail Because the Primary Claims Fail, and Because Plaintiff Has Not Alleged Culpable Participation............................................................................................... 7

    D.    Plaintiff's Own Allegations Defeat His Claim Under Rule 10b-10.............8

III.    CONCLUSION.....................................................................................................11

# TABLE OF AUTHORITIES
## FEDERAL CASES

*Aaron v. SEC,*
  446 U.S. 680, 100 S. Ct. 1945 (1980) .................................................................. 10

*Arst v. Stifel, Nicholas & Co., Inc.,*
  86 F.3d 973 (10th Cir. 1996) ................................................................................. 9

*Auer v. Robbins,*
  519 U.S. 452, 117 S. Ct. 905 (1997) ..................................................................... 9

*Banca Cremi, S.A. v. Alex, Brown & Sons, Inc.,*
  132 F.3d 1017 (4th Cir. 1997) ............................................................................... 6

*Copland v. Grumet,*
  88 F. Supp. 2d 326 (D.N.J. 1999) ......................................................................... 7

*Ernst & Ernst v. Hochfelder,*
  425 U.S. 185, 96 S. Ct. 1375 (1976) ..................................................................... 5

*Higgins v. Beyer,*
  293 F.3d 683 (3d Cir. 2002) .................................................................................. 7

*In re Advanta Corp. Secs. Litig.,*
  180 F.3d 525 (3d Cir. 1999) ................................................................................ 10

*In re Alpharma Inc. Sec. Litig.,*
  372 F.3d 137 (3d Cir. 2004) .................................................................................. 4

*In re Campbell Soup Co. Sec. Litig.,*
  145 F. Supp. 2d 574 (D.N.J. 2001) ....................................................................... 7

*In re DaimlerChrysler AG Sec. Litig.,*
  197 F. Supp. 2d 42 (D. Del. 2002) ........................................................................ 7

*In re Home Healthcare Corp. of America Sec. Litig.,*
  1999 U.S. Dist. LEXIS 123099 ............................................................................ 5

*In re: Scholastic Corp. Sec. Litig.,*
  252 F.3d 63 (2d Cir. 2001) .................................................................................... 7

*Johnston v. HBO Film Management, Inc.,*
  265 F.3d 178 (3d Cir. 2001) .................................................................................. 6

*Press v. Quick & Reilly, Inc.,*
  218 F.3d 121 (2d Cir. 2000) ............................................................................. 8, 9

*Rombach v. Chang,*
  355 F.3d 164 (3d Cir. 2004) .................................................................................. 7

*Rowe v. Morgan Stanley Dean Witter,*
  191 F.R.D. 398 (D.N.J. 1999) ............................................................................... 6

# TABLE OF AUTHORITIES
## (continued)

*Shapiro v. UJB Financial Corp.*,
   964 F.2d 272 (3d Cir. 1992) .................................................................................................. 5, 7

### FEDERAL STATUTES, REGULATIONS AND RULES

**Securities Act of 1933**
  Section 11 ............................................................................................................................... 3
  Section 12(a)(2) ...................................................................................................................... 3

**Securities Exchange Act of 1934**
  Section 10(b) ............................................................................................................. 2, 3, 8, 10

17 C.F.R. 240.10b-5 ....................................................................................................................... 3, 5 8

17 C.F.R. 240.10b-10 ................................................................................................................ 2, 8, 9, 10

Fed. Rule Civ. Proc. 9(b) ............................................................................................................ 2, 3, 4, 5

Defendants Merrill Lynch Group, Inc. ("Merrill Lynch Group"), and Merrill Lynch & Co., Inc. ("ML&Co.") (the parent and grandparent company, respectively, of defendant Merrill Lynch Investment Managers, L.P.), and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S") (the brokerage subsidiary of ML&Co.) (collectively, the "Non-Fund Defendants"), hereby join in and adopt the arguments of the other defendants in support of dismissal. This brief highlights additional reasons why the Amended Class Action Complaint fails to state a claim as to the Non-Fund Defendants.

## I.   INTRODUCTION

Investment brokers have a duty to ensure that their recommendations are "suitable" for a particular client's goals and circumstances. By their nature, so-called "unsuitability" claims are highly individualized: a stock that is too risky for one investor may be perfectly appropriate for another; a sound "buy" recommendation for one may be an equally sound "sell" recommendation for another. By this lawsuit, which seeks in vain to improve upon a very similar failed class action in Tennessee a year ago, plaintiff attempts to aggregate an entire purported universe of garden-variety suitability claims into a securities fraud class action. However, plaintiff does not properly state a suitability claim – even on his own behalf – but rather attempts to side-step the individualized issues raised by such a claim by framing this action in terms of allegedly inadequate prospectus disclosure. He contends that the publicly-filed Registration Statements for nearly all of Merrill Lynch's mutual funds, besides providing what he concedes was entirely truthful disclosure to the public at large, should have provided more particularized investment advice uniquely tailored to him and others whose investments exceeded $100,000. Plaintiff's effort to universalize these individualized, fact-specific issues has fatal consequences here, not only foreclosing class certification (which is not yet technically at issue), but also rendering the Complaint substantively defective as a matter of law.

First, for each of the reasons set forth by the other defendants, the Complaint fails to state a primary violation of the securities laws by any defendant (including the Non-Fund

1

Defendants). Accordingly, it necessarily fails to state a claim for "control person" liability against any of the Non-Fund Defendants.

Second, all of plaintiff's claims against the Non-Fund Defendants fail under Federal Rule of Civil Procedure ("F.R.C.P.") Rule 9(b). Although plaintiff has exclusively confined his disclosure claims to the mutual funds' Registration Statements, he inexplicably has named his brokerage firm, MLPF&S, as a purported defendant to those disclosure claims. Not surprisingly, plaintiff nowhere explains what role the brokerage firm conceivably might have played in the issuance of the purportedly misleading Registration Statements. Nor, for that matter, does he explain what defendants ML&Co. and ML Group – who are named as primary *and* secondary defendants to plaintiff's Rule 10b-5 claim, and as secondary defendants to certain other claims – allegedly did wrong. They are simply identified as parent companies of other defendants. Quite apart from the other defects identified in the moving papers of the other defendants, the absence of specific allegations of wrongdoing by these defendants independently necessitates dismissal of the Non-Fund Defendants.

Third, the sole claim that is uniquely directed at MLPF&S – the fourth cause of action for an alleged violation of Section 10(b) of the Securities Exchange Act of 1934 (the "34 Act") and Securities and Exchange Commission ("SEC") Rule 10b-10 thereunder – fails as a matter of law. The precise legal proposition upon which this claim is premised – that MLPF&S was required to state in its trade confirmations precisely how much it received in remuneration for mutual fund trades – has been considered and rejected by both the SEC and the Second Circuit. It also is defective, in any event, for failure to allege *scienter*.

## II. ANALYSIS

### A. The Non-Fund Defendants Join In the Arguments Of The Other Defendants.

The motion to dismiss filed by the other defendants demonstrates that the Complaint fails to state a claim against any defendant. The Non-Fund Defendants hereby adopt and join in each of the arguments made by the other defendants.

### B. All Of Plaintiff's Disclosure Claims Asserting Primary Violations By The Non-Fund Defendants Fail For The Additional Reason That Plaintiff Has Not Alleged Facts Showing Any Violation By Any Of These Defendants.

As shown in the moving papers of the other defendants, plaintiff's disclosure claims[1] fail under F.R.C.P Rule 9(b) because plaintiff fails at the threshold to allege specific facts showing that the purported "truth" he alleges was misstated or omitted is, in actuality, a "truth" at all. The sole basis for plaintiff's hypothesis that B Shares "never make economic sense" is that, for investments over $100,000, "they are out-performed over longer holding periods by Class D Shares and over shorter periods by Class C Shares." Cplt. at 76. As a matter of pure logic, this syllogism is false. It simply does not follow that:

1. If B Shares are outperformed by D Shares in the long run; and
2. If B Shares are outperformed by C Shares in the short run;
3. Then any rational investor will choose either D Shares or C Shares, but never B Shares.

On the contrary, setting aside that plaintiff never identifies the precise temporal tipping point between "long" and "short" term, and even accepting his premises as invariably true (which they are not), what *does* follow is merely that a hypothetical investor who firmly intends to hold for a "long" time would rationally always purchase D Shares, and one who firmly intends to hold for a "short" time would rationally always purchase C Shares. But one who, like most

---

[1] As used in this memorandum, the term "disclosure claims" refers to plaintiff's claims under 17 C.F.R. 240.10b-5 (§ 10(b) of the '34 Act), 15 U.S.C. § 77k(a) (§ 11 of the 1933 Securities Act (the "'33 Act")), and 15 U.S.C. § 77*l*(a)(2) (§ 12(a)(2) of the '33 Act).

3

people, simply does not know how long he will hold, or who would like to hold long term but doubts whether the market will perform well in the long term, or who for any other reason is undecided, might just as or more reasonably opt for a middle course (*i.e.*, B Shares), thus passing up the potentially "best" result in order to avoid the potentially worst result should his prediction prove wrong (*i.e.*, of opting for D Shares but deciding or needing to sell early, or opting for C Shares but deciding instead to hold long term). Furthermore, as shown in the moving papers of the other defendants, even if plaintiff's theory were not flawed as a matter of logic, it in any event is flawed as a matter of simple mathematics, because there demonstrably are situations, even for wealthy investors like plaintiff, where B Shares do perform as well as or better than the other share classes.

But even if these threshold defects did not exist, plaintiff's claims would nonetheless fail under F.R.C.P. Rule 9(b) for additional reasons specific to the Non-Fund Defendants.

F.R.C.P. Rule 9(b) requires that fraud be pleaded "with particularity." As the Third Circuit has put it, "'Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany "the first paragraph of any newspaper story" – that is, the "who, what, when, where and how" of the events at issue.'" *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 148 (3d Cir. 2004) (quoting *In re Rockefeller Center Properties*, 311 F.3d 198, 217 (3d Cir. 2002)).

All of plaintiff's claims are subject to these requirements. Claims under § 10(b) of the '34 Act are, by definition, fraud claims subject to Rule 9(b). *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S. Ct. 1375, 1381 (1976). And claims under §§ 11 and 12 of the '33 Act are subject to Rule 9(b) when they "sound in fraud." *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 288 (3d Cir. 1992). A claim "sounds in fraud" when it asserts that defendants misled investors intentionally or recklessly, rather than negligently. *Id.* This is the case here.[2]

---

[2] *See, e.g.*, Cplt. ¶ 8 ("Defendants have structured the Registration Statements . . . to focus the potential investors' attention on the financial incentives that the registered representatives affiliated with MLPF&S have in the sale of Class A and Class D Shares; however, they obscured

4

In this case, however, plaintiff has failed to explain "when," "where," or "how" the Non-Fund Defendants did anything that could be construed as a violation of Rule 10b-5 of the '34 Act (which all three of the Non-Fund Defendants are alleged to have violated as primary actors) or of §§ 11 or 12 of the '33 Act (which MLPF&S is alleged to have violated as a primary actor). To be sure, the Complaint makes conclusory allegations of statutory violations by all "defendants" lumped together (Cplt. ¶¶ 178-180), but it nowhere contains any factual allegations regarding these defendants' purported role in the alleged fraud. *In re Home Healthcare Corp. of America Sec. Litig.*, 1999 U.S. Dist. LEXIS 1230 at *60 (E.D. Pa. Jan. 29, 1999) ("When the acts of multiple defendants are alleged to constitute fraud, plaintiffs must separately plead the allegedly fraudulent acts of each defendant to comply with Rule 9 (b)."). The absence of such allegations is unsurprising: plaintiff presumably has not alleged that any Non-Fund Defendant had any involvement in the preparation of the purportedly misleading Registration Statements, *which is the only alleged misconduct at issue here*, because he appreciates that any such allegation would be false. Thus, plaintiff simply has overreached in naming any of the Non-Fund Defendants as primary violators of any of the securities laws at issue here.

The presence of MLPF&S, a broker-dealer, as a defendant to the disclosure claims is particularly difficult to square with plaintiff's theory that the Registration Statements were misleading. Nor can its joinder as a defendant be explained on the basis that plaintiff really intended, but failed, to assert a "suitability" claim on behalf of a purported class. As explained earlier, the transparent point of his Complaint is to avoid just this, given the settled law that unsuitability claims are quintessentially individual claims that cannot receive class treatment. *See Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 190 (3d Cir. 2001) (claims of investor fraud based on allegedly false oral statements of brokers are inappropriate for class

---

the financial incentives that these brokers have in connection with the sale of Class B Shares."); ¶ 129 (defendants "used placement and emphasis to cast the Class B shares in an unduly positive light"); ¶ 133 ("defendants elected not to emphasize the material fact that breakpoints on front-end load shares would result in a material reduction in investor expense").

5

treatment); *Rowe*, 191 F.R.D. at 413 (unsuitability claims are inappropriate for class treatment because "proving a claim for unsuitable trading necessarily requires an individualized and fact intensive review" of many factors). Indeed, plaintiff has conspicuously *not* alleged that he sought or received any advice whatsoever from his MLPF&S broker regarding his mutual fund purchases, much less inappropriate advice (which would be required to state a suitability claim),[3] and still less that all other putative class members did so, too.

Thus, *even if* plaintiff had adequately alleged the existence of any misleading statement or omission in the Registration Statements (a premise that is disproved in the other defendants' papers), plaintiff's failure to identify a single purportedly misleading statement made by each of the Non-Fund Defendants necessitates dismissal of all of plaintiff's disclosure claims asserting primary violations by the Non-Fund Defendants, regardless of whether those claims are dismissed against the other defendants. *Rombach v. Chang*, 355 F.3d 164, 170 (3d Cir. 2004) (Rule 9(b) requires, *inter alia*, that plaintiff "identify the speaker").

### C. All Of Plaintiff's Disclosure Claims Asserting "Control Person" Liability By The Non-Fund Defendants Fail Because the Primary Claims Fail, and Because Plaintiff Has Not Alleged Culpable Participation.

"To state a claim for control person liability, the plaintiff must allege (1) a primary violation of the federal securities laws by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful way a culpable participant in the primary violation." *In re DaimlerChrysler AG Sec. Litig.*, 197 F. Supp. 2d 42, 55 (D. Del. 2002). Because, as outlined in the brief filed concurrently by the other defendants, plaintiff's claims of primary violations are legally defective, his "control person" claims must be dismissed. *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 279 (3d Cir. 1992). Similarly, the

---

[3] *See, e.g., Banca Cremi, S.A. v. Alex, Brown & Sons, Inc.*, 132 F.3d 1017, 1032 (4th Cir. 1997); *Rowe v. Morgan Stanley Dean Witter*, 191 F.R.D. 398, 410 (D.N.J. 1999).

"control person" claims must be dismissed because, as noted above, plaintiffs have failed to allege "culpable participation" by any of the Non-Fund Defendants in the purported misconduct.[4]

### D. Plaintiff's Own Allegations Defeat His Claim Under Rule 10b-10.

Plaintiff's final claim is that MLPF&S, the brokerage defendant, violated § 10(b) of the '34 Act and SEC Rule 10b-10 thereunder by failing to "disclose the precise amount that MLPF&S received pursuant to the sales of the Shares of the Merrill Lynch Funds to the members of the Class." Cplt. ¶ 188. This very claim, however, was rejected by the Second Circuit in *Press v. Quick & Reilly, Inc.*, 218 F.3d 121, 129 (2d Cir. 2000), based on specific guidance from the SEC.

Rule 10b-10 provides, in relevant part, that a broker may not effect a securities transaction (with certain exceptions) unless it provides its customer with written notification of "the amount of any remuneration received or to be received by the broker from such customer" and "[t]he source and amount of any other remuneration received or to be received by the broker in connection with the transaction." 17 C.F.R. § 240.10b-10(a)(2).

In 1979, the Investment Company Institute – a mutual fund trade group – requested interpretive guidance from the SEC staff regarding the application of this rule to sales of mutual fund shares. Investment Company Institute, SEC No-Action Letter, 1979 SEC No-Act. LEXIS 2673 (Apr. 18, 1979)) at *6 (copy attached hereto as Exhibit A). The SEC staff issued a no-action letter stating that, as long as purchasers of mutual funds were given a copy of the

---

[4] A number of district courts in the Third Circuit have determined that, although "culpable participation" is an element of control person liability, it need not be alleged in the complaint. *See, e.g., In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 600 (D.N.J. 2001). *But see Copland v. Grumet*, 88 F. Supp. 2d 326, 335 (D.N.J. 1999). The Third Circuit has not yet reached the question, but the Second Circuit has suggested that culpable participation, like the other elements of a "control person" claim must be alleged. *In re: Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d Cir. 2001). Given that the purpose of a Rule 12(b)(6) motion is to test whether a plaintiff has adequately alleged the essential elements of a cause of action, *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), it makes no sense that a plaintiff could survive such a motion without pleading all such elements – particularly where the underlying claim is one of fraud.

prospectus, which itself was required to disclose "the precise amount of the sales load or other charges or a formula that would enable the customer to calculate the precise amount of those fees," no further disclosures were required under Rule 10b-10. *Id.* at *4-*5.

Subsequently, in the *Press* case, as here, the question was whether defendants violated Rule 10b-10 because the prospectuses for the funds did not disclose the "precise amount" of the remuneration *received by* the defendants. 218 F.3d at 129. The court asked the SEC, as the promulgating agency, to submit an *amicus* brief setting forth its interpretation of this requirement. *Id.* at 126. The SEC rejected the assertion that the precise amount of defendants' remuneration was required to be disclosed. *Id.* at 127. The "precise amount" language in the 1979 no-action letter, it explained, was designed to ensure that customers understood how much they were paying, and thus referred to the precise amounts *paid by the customer* – like loads and annual fees – not to the actual compensation *received by the broker*. *Id.* The SEC stated that disclosure of third-party remuneration, by contrast, is intended to inform customers of the brokerage's firm's conflict of interest – *for which precision is not necessary*. *Press*, 218 F.3d at 127.

As the Second Circuit noted, the SEC's interpretation of its own Rules is binding on the courts, unless plainly erroneous or inconsistent with the regulations. *Id.* at 128 (citing *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 911 (1997)). Accordingly, the Court endorsed the SEC's analysis – including the key point that the "precise amount" language from the 1979 no-action letter had "no bearing" on the disclosure requirements for third-party remuneration – and held that there was no violation of Rule 10b-10.

The reasoning in *Press* is dispositive here. There is simply no requirement that MLPF&S disclose the "precise amount that MLPF&S received pursuant to the sales of the Shares," as plaintiff alleges. Plaintiff alleges no facts that would constitute a violation of any obligation that is imposed by Rule 10b-10.

8

Moreover, plaintiff has failed to plead facts giving rise to a "strong inference" of *scienter* with respect to his Rule 10b-10 claim. Rule 10b-10 does not itself give rise to a private right of action. *Arst v. Stifel, Nicholas & Co., Inc.*, 86 F.3d 973, 977 (10th Cir. 1996). A violation of Rule 10b-10 is only actionable if Section 10(b) of the Securities Exchange Act of 1934 provides an implied right of action for that violation. *Id. Scienter* is an essential element of any Section 10(b) claim. *Aaron v. SEC*, 446 U.S. 680, 695; 100 S. Ct. 1945, 1955 (1980).

As outlined in the brief filed by the other defendants, plaintiff has failed to allege facts giving rise to a "strong inference" of *scienter* as required by the PSLRA. In particular, the allegation that defendants stood to profit from the sale of B Shares is insufficient, as a matter of law, to satisfy the "strong inference" requirement. *In re Advanta Corp. Secs. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999). That conclusion is still more compelling with respect to plaintiff's Rule 10b-10 claim because plaintiff has not explained any way in which the alleged violation of Rule 10b-10 could have operated, much less been intended to operate, to increase MLPF&S' profits. For this reason, as well, plaintiff's fourth cause of action must be dismissed.

//

## III. CONCLUSION

For each and all of the reasons set forth in the other defendants' moving papers, and for the independent reasons set forth above, plaintiff's Complaint should be dismissed in its entirety.

Dated: September 10, 2004

>BRESSLER, AMERY & ROSS
>A Professional Corporation
>325 Columbia Turnpike
>Florham Park, New Jersey 07932
>P.O. Box 1980
>Morristown, New Jersey 07962
>
>By: _/s/_____
>    Brian F. Amery (BA 7144)
>    David J. Libowsky (DL 9250)
>
>MUNGER, TOLLES & OLSON LLP
>355 South Grand Avenue
>35th Floor
>Los Angeles, California 90071
>(213) 683-9100
>(213) 687-3702 (fax)
>
>Attorneys for Defendants
>Merrill Lynch & Co., Inc., Merrill Lynch
>Group, Inc., and Merrill Lynch, Pierce,
>Fenner & Smith Incorporated

EXHIBIT A

1979 SEC No-Act. LEXIS 2673

**REFERENCE:**   Securities Exchange Act of 1934 - Section 10(b) - Rule 10b-10

April 18, 1979

**CORE TERMS:** customer, prospectus, mutual fund, confirmation, remuneration, disclosure, broker, dealer, investor, Securities Act, registered, separately, open-end, information required, set forth, completion, proviso, participating, broker-dealer, notification, offering, mutual, enforcement action, public offering, precise amount, mutual funds, break point, per share, contemporaneous, interpretative

**COMPANY:** [*1] Investment Company Institute
**NO-OF-LETTERS:** 2
**SEC-REPLY-1:**
Mr. Donald O'Connor
Vice President - Operations
Investment Company Institute
1775 K Street, N.W.
Washington, D.C. 20006

Dear Mr. O'Connor:

In your letter of November 17, 1977, you inquired "on behalf of the mutual fund industry" whether Securities Exchange Act Rule 10b-10 requires disclosure on a confirmation of the amount of any remuneration received by a broker or dealer in connection with a transaction in a security, issued and offered by an open-end management investment company and registered pursuant to the Securities Act of 1933. I understand that your request pertains to transactions that may be effected on either an agency or principal basis, including transactions that are confirmed by means of a so-called "historical account statement," prepared and sent to the customer by the investment company or a service agent on behalf of the company's principal underwriter or other participating broker-dealer. n1/ I further understand that your inquiry relates only to transactions for which the customer has received, at or before completion of the transaction, a current prospectus applicable to the securities being offered by the investment [*2] company.

> n1/ See letter of Feb. 9, 1972 to Mr. Robert L. Augenblick from Allan S. Mostoff.

Rule 10b-10 provides generally that it shall be unlawful for any broker or dealer to effect any transaction in a security for or with a customer unless the broker or dealer, at or before completion of the transaction, gives or sends to the customer written notification of various facts pertinent to that transaction. If the broker-dealer is acting as agent for the customer (or for some other person or for both the customer and some other person), paragraph (a)(4)(ii) requires disclosure of:

the amount of any remuneration received or to be received by [the broker] from such customer in connection with the transaction...

and paragraph (a)(4)(iii) requires disclosure of:

the source and amount of any other remuneration received or to be received by [the broker] in connection with the transaction; provided, however, That if, in the case of a purchase, the broker was not participating in a distribution, or in the case of sale, was not participating in a tender offer, the written notification may state whether any other remuneration has been or will be received and that the [*3] source and amount of such other remuneration will be furnished upon written request of such customer.

As you noted in your letter, the Commission has stated with respect to paragraph (a)(4)(iii):

in the case of offerings registered under the Securities Act of 1933, the final prospectus delivered to the customer should generally set forth the information required by the proviso with respect to source and amount of remuneration.... In such situations the information specified in the proviso need not be separately set forth on the confirmation. n2/

> n2/ Securities Exchange Act Release No. 13508 (May 5, 1977) at n. 41.

Also, paragraph (a)(5)(i) requires, in the case of principal transactions, disclosure of

The amount of any mark-up, mark-down, or similar remuneration received in a transaction in an equity security if [the dealer] is not a market market in that security and if, after having received an order to buy from such customer, he purchased the security from another person to offset a contemporaneous sale to such customer or, after having received an order to sell from such customer, he sold the security to another person to offset a contemporaneous purchase from [*4] such customer....

In your letter, you state, "the mutual fund prospectus provides investors with complete information regarding sales charges." I understand that the current prospectus requirements provide for prominent disclosure of the sale charge expressed as a percentage

Page 1

of the public offering price per share and any charges made in connection with a redemption or repurchase of shares. Furtheremore, you note that a detailed schedule of "'break point' sales charges, as well as the maximum dealer discount" must be set forth in the body of the prospectus.

On the basis of the foregoing, we would not recommend enforcement action to the Commission under Rule 10b-10, if a customer's confirmation of a transaction in a security registered pursuant to the Securities Act of 1933 and issued by a registered open-end management investment company did not disclose the sales load or any other charges in connection with the transaction, provided that the customer had received, at or before completion of the transaction, a current prospectus applicable to the security that disclosed the precise amount of the sales load or other charges or a formula that would enable the customer to calculate [*5] the precise amount of those fees. Of course, if a broker-dealer received remuneration which was not disclosed in the prospectus in the manner described above, that remuneration would be required to be separately disclosed on a confirmation. This position is a staff position on enforcement action and does not purport to represent any legal conclusions concerning the issues presented in your letter. Furthermore, this position may be withdrawn pending any further study of confirmation disclosures for transactions in securities issued by open-end managment investment companies.

Sincerely,

Roger D. Blanc
Chief Counsel
**INQUIRY-1:** Investment Company Institute
1775 K STREET N. W., WASHINGTON, D.C. 20000
(202) 293-7700
November 17, 1977

Roger D. Blanc, Chief Counsel
Division of Market Regulation
Securities and Exchange Commission
Washington, D.C. 20549

Re: Rule 10b-10

Dear Mr. Blanc:

On behalf of the mutual fund industry, the Investment Company Institute * hereby requests interpretative advice with respect to Rule 10b-10 under the Securities Exchange Act of 1934, as adopted by the Commission on May 5, 1977. (Release Nos. 34-13508 and IC-9753).

* The Investment Company Institute is the national association of the American mutual fund industry. Its membership includes 434 open-end investment companies ("mutual funds"), their investment advisers and principal underwriters. Its mutual fund members account for over 90% of industry assets and have approximately eight million shareholders.

[*6]

For many years, the mutual fund industry has been interested in the Commission's confirmation rules, particularly those provisions that relate to the use of quarterly confirmations for contractual and other systematic purchase plans. Indeed, historically, transaction statements sent to investors by mutual funds generally have contained more pertinent securities transaction information than required by the Commission's confirmation rules. Generally, such statements, which are known in the industry as historical account statements, resemble the "passbook" which an individual would receive from a savings bank or a savings and loan institution. These historical account statements, in conjunction with the mutual fund prospectus, have provided investors with extremely complete and detailed information concerning their transactions in mutual fund shares.

Mutual funds are unique insofar as they are in continuoujs registration. Investors purchasing mutual fund shares must have a current prospectus at or before the consummation of each sale. Mutual fund prospectuses, by definition, must contain detailed disclosure about all material facts concerning the securities offered therein. Form [*7] S-5 under the Securities Act of 1933 sets forth the requirements concerning the information which must be disclosed in mutual fund prospectuses. The Commission has published specific Guidelines for the Preparation of Form S-5. (Release No. 33-5259 and IC-7220; June 9, 1972). For example, Form S-5 provides that the outside front cover page of the prospectus must set forth the fund's sales charge expressed as a percentage of the public offering price per share and any charges made in connection with a redemption or repurchase of shares. Further, a detailed schedule of "break point" sales charges, as well as the maximum dealer discount, must be set forth within the body of the prospectus. Thus, the mutual fund prospectus provides prospective investors with complete information regarding sales charges.

The Institute and its members carefully reviewed and commented upon Rule 10b-10 when first proposed, Release No. 34-12806, and upon the recently proposed

amendments thereto, Release No. 34-13661. The new rule and the proposed amendments appear to have been designed primarily to correct deficiencies in the disclosure contained in confirmations given to customers by brokers and dealers [*8] who purchase or sell exchange-listed or OTC-traded securities for, from, or to customers in what can be described as "typical" brokerage transactions. While the proposed amendments to Rule 10b-10 set forth special requirements for certain periodic mutual fund transactions, it appears that mutual fund principal under-writers may also be subject to the general requirements of Rule 10b-10 insofar as they are registered brokers or dealers and act in either an agency or principal capacity.

Our request for interpretative advice concerns the disclosure required by Rule 10b-10 in connection with the sale of shares of open-end management investment companies which, as we noted above, are in continuous registration under the Securities Act of 1933. More specifically, we seek confirmation of our belief that the information required by Rule 10b-10 need not be separately set forth on a confirmation if it has already been disclosed to the mutual fund investor in the fund's prospectus.

The first paragraph of Rule 10b-10 states that:

"It shall be unlawful for any broker or dealer to effect for or with the account of a customer any transaction in... any security... unless such broker or dealer, [*9] at or before completion of such transaction, gives or sends to such customer written

With regard to the information that a confirmation must contain, the release adopting Rule 10b-10 states at footnote 41 that:

"... [In] the case of offerings registered under the Securities Act of 1933, the final prospectus delivered to the customer should generally set forth the information required by the proviso with respect to source and amount of remuneration... In such situations the information specified in the proviso need not be separately set forth on the confirmation."(emphasis added).

While these comments were made in the context of the disclosure required in the case of transactions effected as part of a "special offering" or otherwise involving special selling efforts, we believe the same conclusion is appropriate in the case of transactions in mutual fund shares.

The language of Rule 10b-10 appears to clearly contemplate that the notification requirements can be satisfied by providing investors with two distinct documents which need not duplicate each other, i.e., the prospectus and the confirmation. Taken together, the prospectus and the mutual fund account statement [*10] provide investors with all of the information required by the rule.

Consequently, we believe that, as a general principle, the information disclosed to investors in a mutual fund's prospectus need not be separately set forth on confirmations sent to shareholders. We request the concurrence of the Division of Market Regulation in our interpretation of Rule 10b-10. We would be pleased to discuss our request with the staff or furnish any supplemental information that may be desired.

Sincerely,

Donald O'Connor
Vice President-Operations

cc: Jeffrey L. Steele, Esq.